UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
VASSILIOS MANIOS,

                Petitioner,

     -v-                                    No.  14CV4331-LTS-DCF

EVANGELIA MANIOS ZACHARIOU,

                Respondent.
--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Petitioner Vassilios Manios ("Petitioner" or "Manios") moves to vacate an arbitration award rendered by a tribunal of the American Arbitration Association in favor Evangelia Manios Zachariou ("Respondent" or "Zachariou").  Zachariou cross-moves for confirmation of the arbitration award, and for an award of attorneys' fees incurred in litigating this motion.  The Court has jurisdiction of this action pursuant to 9 U.S.C. § 203.  The Court has considered the parties' arguments carefully.  For the reasons stated below, the Court denies Manios' petition to vacate the award, grants Zachariou's cross-motion for confirmation, and denies Zachariou's cross-motion for attorneys' fees.

## BACKGROUND[1]

        This case arises from a long-running family dispute between Petitioner and Respondent, who are brother and sister, over the distribution of assets left by their late brother

---

[1]    The facts recited herein are drawn largely from the final arbitration award.  ( See Declaration of John G. Kissane in Support of First Amended Petition to Vacate Arbitration Award ("Kissane Dec."), Ex. 3 (the "Final Award").)

who died intestate in 1995.  (Final Award at p. 1.)  Over the course of several years, the parties

entered into a series of agreements with an eye towards efficiently dividing the assets and

providing for the effective management of the properties and businesses included in the estate.

(Final Award at p. 1.)  In 1999, the parties entered into an agreement establishing their joint,

equal ownership of the familial assets.  (Id.)  Thereafter, in March of 2002, the parties entered

into an agreement known as the "London Agreement," which provided that Manios would

purchase Zachariou's 50% interest in an aggregate of American businesses and properties

referred to as the "U.S. Companies."  (Id. at p. 2.)  The London Agreement was governed by

Greek law, and any disputes arising thereunder were to be litigated in Greece.  (Id.)

       The parties simultaneously entered into an agreement known as the "U.S.

Agreement," which set out a process for: "(1) an accounting of the affairs of the . . . [U.S.

Companies] during the relevant time period leading to a report detailing [an] auditor's findings;

(2) . . . [setting] a period in which the Parties would 'confer amicably and in good faith to agree

on the amount of any distributions or payments that should be made in order to' realize the

objective of equal distribution of the assets or their proceeds and of the earnings of the assets in

the relevant period; (3) [and making] a determination as a result of this process as to 'the extent

to which [either Party] has received a disproportionate share of prior income or other

distributions in respect of [the U.S. Companies] and the amount of such excess benefit (such

amount the 'Party Distribution').'"  (Id. at pp. 2-3.)  The U.S. Agreement further provided that, if

the parties failed to agree on the amount of the Party Distribution by way of the auditor's report,

"the amount of the Decana Distribution, the Prestige Distribution, the Texas Distributions and/or

the Party Distribution as applicable shall be determined by an arbitration administered by the

American Arbitration Association in accordance with its Commercial Arbitration Rules," subject

to confirmation by any court having appropriate jurisdiction.  (See U.S. Agreement, Kissane Dec., Ex. 5 ¶ 10.)[2]

The audit contemplated in the U.S. Agreement was never completed, and the parties were unable to come to reach an agreement on the amount of the Party Distribution. (Final Award at p. 3.)  After several years of litigation in both federal and state courts, Zachariou instituted the subject arbitration in 2009.  (See First Amended Petition to Vacate Arbitration Award ¶¶ 14-16.)  The arbitration panel issued its Final Award on March 20, 2014, finding in favor of Zachariou in the amount of approximately $10.8 million, inclusive of approximately $4.8 million of prejudgment interest.  (See Kissane Dec., Ex. 3, "Disposition of Applications for Modification/Clarification of Final Award" at p. 1.)

Manios filed a petition to vacate the Final Award on June 16, 2014 (Docket Entry No. 2), and on August 29, 2014, he filed the instant motion in support of that petition.  (Docket Entry No. 14.)  On September 30, 2014, Zachariou filed a cross-motion to confirm the Final Award, and for attorneys' fees.  (Docket Entry No. 25.)

---

[2]     With respect to the assets to be distributed, the preceding paragraph of the U.S. Agreement provided that the parties would confer in good faith "with respect to (a) the value of any cash or other assets . . . remaining in Decana (the 'Decana Distribution'); (b) the value of any cash or other assets . . . remaining in Prestige (the 'Prestige Distribution'); (c) the value of any cash or other assets remaining in each of the Texas Subsidiaries (the 'Texas Distributions'); and (d) the extent to which either VM or EMZ has received a disproportionate share of prior income or other distributions in respect of Prestige, Decana and/or the Texas Subsidiaries from April 9, 1995 through the date of the London Agreement, and the amount of such excess benefit (such amount, the 'Party Distribution')."  ( See U.S. Agreement, Kissane Dec., Ex. 5 ¶ 9.)

<u>D</u><small>ISCUSSION</small>

<u>Legal Standards</u>

The showing required to avoid summary confirmation of an arbitration award is a lofty one, and the party moving to vacate an award bears a heavy burden of proof.  <u>See</u> <u>e.g.</u>, <u>Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.</u>, 103 F.3d 9, 12 (2d Cir. 1997).  Arbitration awards are "subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  <u>Id.</u>  (internal quotation marks and citation omitted).  "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."  <u>Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 388 (2d Cir. 2003).  "[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."  <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 36 (1987).

Because the award at issue arises from a commercial arbitration involving foreign parties, this motion practice is brought pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention").  <u>See</u> 21 U.S.T. 2517, 330 U.N.T.S. 38; <u>codified</u> <u>in</u> <u>part</u> <u>at</u> 9 U.S.C. §§ 201 <u>et</u> <u>seq.</u>  Therefore, the award at issue here must be vacated if it violates one of the principles enumerated in Article V of the New York Convention.  Since the award was rendered in New York, the grounds for vacatur under the  Federal Arbitration Act ("FAA") are also applicable to the extent that they do not conflict with the New York Convention.  <u>See</u> 9 U.S.C. § 208; <u>see also</u> <u>Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 23 (2d Cir. 1997) ("The Convention specifically

contemplates that the state in which, or under the law of which, the award is made, will be free

to set aside or modify an award in accordance with its domestic arbitral law and its full panoply

of express and implied grounds for relief").

      Article V(1)(c) of the New York Convention provides that a court may vacate an

arbitration award if it "deals with a difference not contemplated by or not falling within the

terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the

submission to arbitration."  See New York Convention Article V(1)(c); see also Parsons &

Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508

F.2d 969, 976 (2d Cir. 1974).  A "narrow construction [of this provision]  would comport with

the enforcement-facilitating thrust of the Convention."  Id.  Manios does not claim here that any

of the statutory grounds provided by the FAA for vacatur of an award is applicable,[3] but argues

that vacatur is appropriate under the implicit grounds of manifest disregard of the parties'

agreement or of the law.  See Yusuf Ahmed Alghanim, 126 F.3d at 23.

      The Second Circuit has articulated a three-part test for determining whether there

has been manifest disregard of the law: (1) the law must have been clear and explicitly

applicable to the matter before the arbitrators; (2) disregard of the law must have led to an

erroneous outcome; and (3) the arbitrators must have known of the law's existence and its

applicability to the case, and must have disregarded it intentionally.  See T.Co Metals, LLC v.

Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010).  "A federal court cannot vacate

an arbitral award merely because it is convinced that the arbitration panel made the wrong call

on the law. On the contrary, the award should be enforced, despite a court's disagreement with it

---

[3]    See 9 U.S.C. § 10.

on the merits, if there is a <u>barely colorable justification</u> for the outcome reached."  <u>Wallace v. Buttar</u>, 378 F.3d 182, 190 (2d Cir. 2004) (internal quotation marks and citation omitted) (emphasis in original).  Although manifest disregard of the parties' agreement is recognized as an implied ground for vacatur, "[t]he arbitrator's factual findings and contractual interpretation are not subject to judicial challenge," <u>Westerbeke Corp. v. Daihatsu Motor Co., Ltd.</u>, 304 F.3d 200, 214 (2d Cir. 2002) (internal citation omitted), and an arbitrator's interpretation of a contract will not be overruled simply because a court disagrees.  <u>See</u> <u>Yusuf Ahmed Alghanim</u>, 126 F.3d at 25.

<u>Petitioner's Arguments for Vacatur</u>

    *Failure to Determine the U.S. Company Distributions*

    Manios first asserts that the arbitrators disregarded the provisions of the U.S. Agreement insofar as they failed to determine several distributions from the parties' jointly owned assets (the "U.S. Company Distributions") that he contends would have, in essence, served to calculate the expenses of the U.S. Companies incurred during the period of joint ownership.  (<u>See</u> Memorandum of Law in Support of First Amended Petition to Vacate Arbitration Award ("Petitioner's Memo") at pp. 14-15.)  By failing to do so, Manios argues, the panel inappropriately denied him reimbursement of half of the joint expenses of the U.S. Companies, leading to a miscalculation of the Party Distribution in Zachariou's favor.  (<u>See</u> <u>id.</u> at pp.14-16.)  Manios asserts that the panel manifestly disregarded the arbitration agreement by failing to calculate the U.S. Company Distributions, which, Manios argues, the panel was obligated to do by both the language and the spirit of the U.S. Agreement.  In opposition, Zachariou offers a number of counter-arguments, including: that Manios never demanded that

the panel calculate a U.S. Company Distribution and thus waived the claim; that Manios has improperly defined the "U.S. Company Distributions" to include a calculation of expenses incurred by the jointly owned properties; that no such distribution could be made since the jointly owned properties held no distributable assets; and that the language of the arbitration provision of the U.S. Agreement did not require the arbitrator to make a determination of any U.S. Company Distribution.

Most pertinent, however, is the fact that the panel did, in fact, recognize Manios' claims, which it dismissed as outside the scope of the arbitration.  In his briefing, Manios concedes that his claims for reimbursement of expenses were denominated as counterclaims, rather than as an explicit demand for a U.S. Company Distribution.  (Petitioner's Memo at p. 15.)  In a preliminary Decision and Order disposing of the parties' pre-arbitration motions, the panel was careful to define and highlight the narrow scope of the arbitration.  (See generally, July 2010 Decision and Order Kissane Dec., Ex. 7.)  After reviewing Manios' counterclaims, the panel determined that they fell "manifestly outside the scope of the arbitration allowed by the U.S. Agreement" and accordingly dismissed them.  (Id. at p. 5.)  The panel further held that "[d]enominating [these claims] as 'offsets' to recovery to which Claimant might otherwise be entitled does not save them in this case with its very specific arbitration clause.  Like other claims the Parties have lodged against each other during the long life of this dispute, such claims must be vindicated, if at all, in a different forum."  (Id. at pp. 5-6.)[4]

---

[4]   The panel further noted that "[i]t is common ground that certain of the distributions of assets contemplated by Section 9 [of the U.S. Agreement] are impossible because those assets no longer exist.  The dispute thus devolves into one about the 'Party Distribution . . . .'" (July 2010 Decision and Order, Kissane Dec., Ex. 7 at p. 3.) This provides yet another "colorable justification" for why the panel refused to calculate a U.S. Company Distribution.

Arbitrators "are not required to provide an explanation for their decision."

Willemijn Houdstermaatschappij, 103 F.3d at 12.  See also Wall Street Associates, L.P. v.

Becker Paribas Inc., 27 F.3d 845, 849 (2d Cir. 1994) ("[a]rbitrators are not required to provide

the rationale for their award").  Thus, the panel was entitled to dismiss Manios' counterclaims

without offering any insight into its analysis.  "When an arbitrator does not explain its decision,

[a court] will confirm it if a justifiable ground for the decision can be inferred from the facts of

the case."  Data & Development, Inc. v. InfoKall, Inc., 513 F. App'x 117 (2d Cir. 2013) (internal

quotation marks and citation omitted).  Indeed, if "even a barely colorable justification for the

outcome" exists, the award must be confirmed.  See Matter of Andros Compania Maritima, S.A.

(Marc Rich & Co., A.G.), 579 F.2d 691, 704 (2d Cir. 1978).  Conversely, if "the error made by

the arbitrators is so obvious that it would be instantly perceived by the average person qualified

to serve as an arbitrator," the Court can find that the arbitrators have committed an error that

may serve as the basis of a vacatur.  Willemijn Houdstermaatschappij, 103 F.3d at 13.  Manios

has not demonstrated that the panel has committed any such error and, therefore, he has not

identified any proper grounds for vacating the tribunal's dismissal of his counterclaims.

Moreover, a "colorable justification" for the panel's decision exists: it is a

reasonable reading of the U.S. Agreement's narrow arbitration clause, which defines the

contested distributions as ones of assets "remaining" in the U.S. Companies, and does not on its

face mandate arbitral determination of each of the types of distributions.  The arbitrators also

pointed out that certain of the "counterclaims" arose under the London Agreement and were

required to be litigated in a "different forum;" the Court notes that some of those claims are, in

fact, being litigated in Greece.  (See Declaration of Derek J.T. Adler, in Support of the Motion to

Confirm the Arbitration Award and in Opposition to the Petition to Vacate the Award ("Adler

Dec.") ¶ 67.)  Manios has thus failed to carry his burden of demonstrating that the arbitrators determined matters beyond the scope of the arbitration agreement or acted in manifest disregard of that agreement.  Nor has he carried his burden to the extent he argues that the panel manifestly disregarded the law in failing to determine and offset U.S. Company distributions.  Manios has not even addressed the factors set forth by the Second Circuit in <u>T.Co. Metals v. Dempsey</u>.  <u>See</u> 592 F.2d at 339.

> *Manifest Disregard of the Law and Agreement – "Redefining" the Term "Received"*

Manios next argues that the panel manifestly disregarded both the law and the arbitration agreement by "redefining" the term "received" as used within the U.S. Agreement's Party Distribution provision.  (<u>See</u> Petitioner's Brief at p. 17.)  The U.S. Agreement defines the Party Distribution as "the extent to which either [Manios] or [Zachariou] has received a disproportionate share of prior income or other distributions in respect of [the jointly held assets] from April 9, 1995 through the date of the London Agreement, and the amount of such excess benefit."  (U.S. Agreement, Kissane Dec., Ex. 5 ¶ 9.)  Manios asserts that the panel improperly redefined the term "received" to include funds that Manios himself never held or controlled, which Manios claims had been misappropriated by the manager of the U.S. Properties. Therefore, Manios claims, the Party Distribution awarded to Zachariou improperly accounted for funds that the property manager had stolen from the U.S. Properties.  Manios further argues that the panel manifestly disregarded the agreement by failing to properly carry out the "accounting exercise" that the parties intended, and by "reading into the contract meanings not contemplated by the parties."  (Petitioner's Memo at p. 21.)  Finally, Manios argues that the panel disregarded New York law by inferring fraud on his behalf, by assuming that he had concealed assets that he

had received, and in crediting a portion of those assets to Zachariou as part of the Party Distribution.

The Final Award provides that, "for the purposes of the U.S. Agreement's definition, funds were received by a party when that party exercised dominion and control over such funds whether or not they actually passed into that Party's accounts.  Funds diverted to others by whatever means by Respondent for his benefit and use are, in this sense, 'received' when they were first deployed for such purposes, regardless of the success or failure of the transaction for which they were so deployed."  (Final Award at p. 6.)  An arbitrator's "contractual interpretation [is] not subject to judicial challenge, particularly on [a court's] limited review of whether the arbitrator manifestly disregarded the law."  Westerbeke, 304 F.3d at 214.  This Court thus is not permitted to disturb the arbitration panel's decision on the basis of Manios' disagreement with the panel's interpretation of the word "received" in the context of the definition of a Party Distribution.[5]  To the extent that Manios argues that the panel's interpretation of the word "receive" warrants vacatur of the award for manifest disregard of the agreement or of the law, Manios' position is meritless.

In particular, it is clear that the panel's identification of amounts received by Manios was not predicated on a finding of fraud, negligence, breach of fiduciary duty or any other tort that would have fallen beyond the panel's jurisdiction.  Zachariou acknowledges in her statement of claim that her claims for fraud and breach of various duties are to be litigated in

---

[5]      In this connection, the Court notes that it finds the panel's interpretation of the word "received," which includes funds over which it found that Manios had dominion and control, to be reasonable, particularly in light of the Second Circuit's recognition of the theory of constructive receipt of income.  See, e.g., White v. Shalala, 7 F.3d 296, 300-02 (2d Cir. 1993) (recognizing constructive receipt in the context of Social Security funds).

Greece.  (See Adler Dec., Ex. D ¶¶ 72-76.)  As Zachariou notes, "the fact that some of the underlying facts [found by the panel] might also support alternative claims for relief" does not demonstrate that the panel acted in excess of its authority in reaching its decision. (Respondent's Memo at p. 17.)  The Court again notes that the panel was careful to define the narrow scope of authority afforded by the arbitration agreement, and was conscious of remaining within those boundaries.  Manios' argument that the panel failed to employ the "clear and convincing" standard of proof in finding fraud is thus inapposite, as the panel never purported to make any such finding.  (See generally Final Award.)  The Court finds no manifest disregard of New York law in the arbitration panel's decision.

*Award of Prejudgment Interest as Exceeding Authority*

Manios' final argument for vacatur of the Final Award is that the panel improperly exceeded its authority and manifestly disregarded the law by awarding Zachariou prejudgment interest as part of the Party Distribution.  Manios claims that, because the panel did not make an award of compensatory damages, it was not permitted to award interest.  (See Petitioner's Memo at p. 24.)  Furthermore, Manios asserts that the panel manifestly disregarded New York law in awarding interest.  As Manios points out, "[i]nterest awards in New York are purely a creature of statute." Manufacturer's & Traders Trust Co. v Reliance Ins. Co., 8 N.Y.3d 583, 588 (2007) (internal quotation marks and citation omitted).  Manios thus argues that under the U.S. Agreement, which is governed by New York law (See U.S. Agreement, Kissane Dec., Ex. 5 at ¶ 9), the panel was only empowered to award interest pursuant to New York's general prejudgment interest statute relating to contract and property claims, C.P.L.R. § 5001(a).  (See Petitioner's Memo at p. 24.)  C.P.L.R. § 5001(a) provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or

omission depriving or otherwise interfering with title to, or possession or enjoyment of, property

. . . ."  Manios maintains that because there was no "sum awarded" here – rather, the panel

declared a distribution – the panel's decision to award interest must have been in manifest

disregard of applicable New York law.  (See Petitioner's Memo at p. 24.)

   Once again, Manios' argument fails.  When "parties expressly agree to submit

their commercial disputes to AAA arbitration for resolution, such language is reasonably

understood, without more, to agree to arbitration pursuant to AAA rules and to the incorporation

of those rules into the parties' agreement."  Idea Nuova, Inc. v. GM Licensing Group, Inc., 617

F.3d 177, 181 (2d Cir. 2010) (internal quotation marks and citation omitted).  Here, the parties

have expressly agreed to arbitration pursuant to the American Arbitration Association's

("AAA") Commercial Rules and, therefore, these rules are incorporated into the terms of the

U.S. Agreement.  (See U.S. Agreement, Kissane Dec., Ex. 5 ¶ 10.)  AAA Rule R-47(d)(i)

expressly permits an arbitrator to award "interest at such rate and from such date as the

arbitrator(s) may deem appropriate."  Thus, the AAA Rules grant arbitrators authority to award

interest within their discretion, and the panel here did not exceed its authority in doing so.  Nor

did the panel "disregard" the applicability of C.P.L.R. § 5001(a) as Manios argues.  Rather, the

panel specifically considered the issue and decided that, when a panel is asked to assess fair

market value of a business and not award damages, C.P.L.R. § 5001(a) is not implicated.[6]

   The Court finds that Manios has not demonstrated that he is entitled to vacatur of

---

[6] The Final Award also indicates that the panel interpreted the contractual term Party
Distribution as inclusive of interest.  See Final Award at p. 20 ("The Tribunal also
finds that [Manios] received the value of the use of wrongfully retained proceeds from
these transactions, as measured by the pre-award interest determined in its discretion
by the Tribunal.  That interest . . . also constitutes a component of the Party
Distribution.").  Interpretation of a contractual term is strictly within the province of
the arbitrator.  See Yusuf Ahmed Alghanim, 126 F.3d at 25.

the arbitration panel's award under either Article V of the New York Convention or the FAA.
Manios' motion to vacate the arbitration award is therefore denied.


Respondent's Cross-Motion to Confirm the Award

      In her cross-motion, Zachariou asks the Court to confirm the arbitration panel's
Final Award.  Under the New York Convention, a party to an international arbitration may apply
in the U.S. District Court for the district in which the arbitration occurred for an order
confirming the award.  See 9 U.S.C. § 207.  Courts are to confirm an award unless it is vacated,
modified or corrected under the FAA or the New York Convention.  See id.; see also
Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co., 668 F.3d 60, 78 (2d
Cir. 2012).

      As explained above, Manios has not identified any valid basis for vacatur,
modification or correction of the award rendered by the arbitration panel.  Therefore, the Court
grants Zachariou's cross-motion to confirm the Final Award.


Respondent's Cross-Motion for Attorneys' Fees

      Zachariou argues that she is entitled, pursuant to both the Court's inherent power
to award fees and 28 U.S.C. § 1927, to recover the attorneys' fees she incurred in opposing
Manios' motion to vacate the Final Award.  The standard for awarding attorneys' fees through
either channel is the same: the court must find that "(1) the challenged claim was without a
colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes
such as harassment or delay."  Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323,
336 (2d Cir. 1999).  "[B]ad faith may be inferred only if actions are so completely without merit

as to require the conclusion that they must have been undertaken for some improper purpose . . . .”[7] Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000) (internal quotation marks and citation omitted).  The Second Circuit has observed that the decision of whether or not to grant a sanction such as attorneys’ fees is “one of the most difficult and unenviable tasks for a court,” Schlaifer Nance & Co., 194 F.3d at 341, and cautioned that any such decision must be made “with restraint and discretion.”  Id. at 334.

       While Manios’ arguments are ultimately unavailing, it cannot be said that they are so completely without merit that the Court must find that his motion was filed for an improper purpose, such as harassment or delay.  See Berger v. Cantor Fitzgerald Sec., 967 F. Supp. 91, 96 (S.D.N.Y. 1997) (“Although I have decided defendants' motions adversely to plaintiff . . . [p]laintiff's claims were not presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  Finally, it cannot be said that plaintiff or his attorneys unreasonably and vexatiously multiplied the proceedings in this case.  Sanctions are therefore not warranted.”).  The Court sees no indication of bad faith in Manios’ litigation strategy, nor does it appear that Manios has vexatiously multiplied the proceedings in this case.  Furthermore, Zachariou herself is in part to blame for the length and complexity of the parties’ litigation, as she attempted to sue Manios in both federal and state court prior to instituting the arbitration proceeding.

       Because the Court finds that Manios’ motion to vacate the Final Award was not brought in bad faith, Zachariou’s cross-motion for attorneys’ fees is denied.

---

[7]    Zachariou points to a number of cases where courts have assessed sanctions against parties that have brought  meritless motions to vacate arbitration awards.  ( See Respondent’s Memo at p. 24.)  These citations are largely inapposite, as Manios’ behavior is not nearly as egregious as that of the litigants in the cases Zachariou cites.

<u>C</u>ONCLUSION

   For the foregoing reasons, Petitioner's motion to vacate the arbitration panel's

Final Award is denied and Respondent's cross-motion to confirm the award is granted.

Respondent's cross-motion for attorneys' fees is denied.  This Memorandum Opinion and Order

resolves docket entry numbers 14 and 25.

   The Clerk of Court is respectfully requested to enter judgment confirming the

arbitration award and close this case.

   SO ORDERED.


Dated: New York, New York
   March 31, 2015


            __/s/ Laura Taylor Swain__
            LAURA TAYLOR SWAIN
            United States District Judge